## ROBERT GOELET *vs.* TAX ASSESSORS OF THE CITY OF NEWPORT.

JUNE 4, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. This is a petition, brought under the provisions of Sec. 15, Chap. 60, G. L. 1923, as amended by Sec. 4, Chap. 1945, P. L. 1932, for relief from a tax assessed by the Tax Assessors of the City of Newport upon the petitioner's property located in said Newport. The case was heard by a justice of the Superior Court sitting without a jury who found that the full, fair, cash value of petitioner's real estate was $300,000 instead of $529,700, the amount fixed by said assessors, and awarded the petitioner the amount of the tax on the excess at the rate of $24 per $1,000, that is, $5,512.80, with interest from the date of payment. The case is here on respondents' exceptions to the exclusion of testimony and on their exception to the decision of said justice.

The petitioner relied wholly upon the testimony of three experts on real estate that the assessors had placed on said real estate a value greater than the full, fair, cash value thereof. The petitioner's witness, Mr. White, described the Goelet estate as a very magnificent French type of stone residence like a chateau, with fine gates and fencing and a parterre of flowers and general ornamental gardening. In addition to and some distance from the main estate there is a tract of land, included within the assessment, located on Leroy avenue, on which land are the greenhouses, and the stables—now converted into garages. Mr. White described the stables as large and commodious, of brick construction, over which are servants' quarters, and the greenhouses as very fine and elaborate.

Mr. Rooney, another expert witness for petitioner, testified that the gates of the Goelet estate are one of the beauties of Newport, being of extraordinarily fine workmanship; and that there is no estate in Newport more beautiful.

The area of the Ochre Court parcel, on which the dwelling house is located, is 246,170 square feet of land. The area of the detached parcel on Leroy avenue is 90,130 square feet. The assessors valued the land of the Ochre Court parcel at $86,200 and the improvements thereon at $420,000, the Leroy avenue parcel at $8,100, the garage and greenhouse thereon at $15,400, a total of $529,700, the valuation to which the petitioner objects.

Mr. White, one of petitioner's experts, fixes the value of the Leroy avenue parcel at $9,000. He testified that the 90,130 square feet of land was worth ten cents per square foot. He apparently placed no value at all on the very large and commodious stables and the elaborate array of greenhouses which he admitted are upon this parcel of land.

The trial justice fixed the value of this parcel, including land and buildings, at $10,000. It is our opinion that a finding that the extensive and elaborate improvements upon this parcel have a value of only about $1,000 and that both

land and improvements are worth only $10,000 is clearly wrong.

It is clear from the evidence that the petitioner's estate, by reason of its size, architectural beauty, setting in the landscape, interior appointments and complete combination of cliffs, ocean, gardens, greenhouses, artistic gates, boundary walls and shrubbery, is probably the most magnificent estate in Newport. It is, taken as a whole, unique and almost—if not quite—in a class by itself. Many of the parcels of real estate to which petitioner's experts compared this estate were so different in area, location and improvements that a knowledge of the price for which they had been sold was of slight aid in determining the full, fair, cash value of the estate in question. Again, there was considerable evidence tending to show that some of the sales relied upon by petitioner's experts were forced sales. The opinions of the respondents' experts, including Mr. Sullivan, Chairman of the Board of Assessors, appear to have been based upon more valid reasons; and from a study of the record their opinions appear more convincing.

We think the respondents' counsel was unduly restricted in his cross-examination of petitioner's experts. Mr. White, having testified as to the value of the Knight, or Black, estate and compared it with the estate in question, was asked on cross-examination whether he had any idea of the relative cost of the two buildings. Objection to the question was sustained and exception noted. While cost of construction is not the measure of value for tax purposes, nevertheless it is unreasonable not to permit on cross-examination some degree of latitude in inquiring as to the relative cost of the improvements on the two properties which are being compared. The witness might have expressed an opinion on this matter without giving an opinion as to the actual cost of either, and might have explained why the buildings on either or both tracts did or did not increase the value of the land and, if so, to what

extent. See *Hervey* v. *City of Providence*, 47 R. I. 378. This exception is sustained.

Respondents' counsel asked Mr. Dyer on cross-examination what the stables would "bring if they were sold with one half the land there." The ruling excluding such evidence was correct. The rule is stated in 20 C. J. at 774 as follows: "Evidence as to the number of lots into which the tract of land in question can be divided and the value of each lot is inadmissible; it is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted; but it is the tract, not the lots into which it may be divided, that is to be valued."

The exception to the decision is sustained.

The remaining exceptions have been considered, are found to be without merit and are overruled. The case is remitted to the Superior Court for a new trial.

HAHN, J., concurring. While I concur with the majority opinion in the granting of a new trial, I feel that the great weight of the evidence supports the valuation placed upon the *entire* Goelet estate by the tax assessors.

This board has the duty of setting with uniformity the taxable value of property and this valuation is the basis upon which the city's borrowing capacity is measured. The members of the board are apparently acquainted with all items relevant to the determination of the value of real estate. In the instant case their experience and knowledge is demonstrated by the clear and explicit reasons given by their chairman in support of the assessed value of petitioner's estate. This value appears to have been reached after careful study of all the details entering into the valuation of the property.

The estimates given in support of petitioner's case are based upon the sale of properties in no manner comparable to the one in question. As these estimates are practically unsupported by evidence of any probative value, they resolve themselves into an effort to reduce the taxes upon

real estate which, in the majority opinion, is aptly described as "unique and . . . in a class by itself."

*Sheffield & Harvey, William R. Harvey, William P. Sheffield,* for petitioner.

*Jeremiah A. Sullivan, City Solicitor, William MacLeod, Special Counsel,* for respondents.

*John P. Hartigan, Attorney General,* for State Board of Tax Commissioners.